**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE GIBBS a/k/a TARUM GIBBS** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.  09-4766** |
| | : | |
| | : | |
| **DAVID DIGUGLIELMO,** *et al.* | : | |
| **Respondents.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                  **January 5, 2015**

Petitioner, through counsel, objects to the Report and Recommendation ("R&R") of

Magistrate Judge Arnold C. Rapoport, which recommended that the Court deny the petition for a

writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254.  Upon consideration of the objections

and of the record in this case, the Court will overrule the objections and approve the R&R.

The R&R carefully evaluated each claim and concluded that the evidentiary decisions of

the state courts did not deprive Petitioner of a fair criminal trial or contradict any Supreme Court

precedent.  Petitioner has objected to the R&R arguing, as he did in the petition and the briefing,

that witnesses have come forward whose testimony establishes his innocence and that his

counsel was ineffective.  Upon careful review of the record, the Court agrees with the thorough

analysis set forth in the R&R and will overrule Petitioner's objections.  Petitioner has failed to

overcome the hurdle of the deference afforded to state courts, and counsel cannot be deemed

ineffective if the underlying claims lack merit, as they do here.

**I.     BACKGROUND**

The R&R set forth the full procedural history of Petitioner's state criminal case and

accurately quoted the facts as found by the state court.  The Court adopts these sections of the

R&R and summarizes them here to provide context.   Police officers attempted to stop a Dodge Intrepid for having a Pennsylvania license plate but a New Jersey inspection sticker.   The driver resisted this attempt, and led the police on a pursuit, during which someone in the Intrepid fired gunshots toward the police vehicle.   The chase ended with the Intrepid striking a fire hydrant, upon which the driver, who was wearing a red and white checkered shirt, got out of the car, opened the rear door, and then raised his right hand while two other people also got out of the car.   The officers ducked for cover as several more shots were fired, and all three occupants of the Intrepid then ran, managing to elude pursuit.   A shirt matching that worn by the driver was found in a trash bin several blocks away with dried blood that DNA testing later established matched Gibbs.   The Intrepid and a handgun recovered at the scene belonged to Tamara Davis, Gibbs's girlfriend, who had reported the car stolen about an hour after the shooting, after she had received several telephone calls.   A search of Davis's and Gibbs's shared home resulted in the discovery of ammunition matching that found at the scene; Davis then reported her handgun stolen.[1]

Petitioner was tried twice in the Philadelphia Court of Common Pleas; the jury at the first trial acquitted him of charges of attempted murder of police officers and deadlocked on the other charges.   The jury at the second trial convicted Petitioner on charges of aggravated assault against police, criminal conspiracy and possession of an instrument of crime.   Petitioner was sentenced to an aggregate term of 14 to 28 years imprisonment, to be followed by 26 years of reporting probation.[2]

---

[1] R&R at 2-3 (citing *Commonwealth v. Gibbs*, No. 2876 EDA 2010 (Pa. Super. Ct. Oct. 28, 2011)  slip op at 1-2).  As will be discussed below, Petitioner takes issue with some of the factual determinations of the state courts.

[2] *Id.* at 2.

Petitioner filed a counseled direct appeal arguing, *inter alia,* that the evidence was insufficient to support the convictions and the trial court erred in admitting a photograph showing Gibbs holding a handgun.  The Pennsylvania Superior Court affirmed the conviction, finding no improper prejudice to Gibbs in the admission of the photograph, as the trial court gave a limiting instruction that the photograph was admitted only for the purpose of demonstrating that Petitioner had access to a weapon capable of producing the type of spent ammunition recovered from the crime scene, and that the probative value of the photograph outweighed any alleged improper prejudice.   The Pennsylvania Supreme Court denied Gibbs's petition for allowance of appeal.[3]

Gibbs then filed his first petition pursuant to the state Post-Conviction Relief Act ("PCRA").[4]  Counsel was appointed and filed an amended petition that included, among other issues, a claim that trial counsel had been constitutionally ineffective for (1) improperly introducing "prior bad acts" testimony in telling the jury that charges against Davis were brought, but later withdrawn, and (2) for failing to secure an expert witness to establish that the firearm depicted in the photograph of Petitioner shown to the jury could not have been the gun used in the crime. The PCRA court rejected the claims, holding in part that because the Commonwealth's ballistics expert never testified that the gun pictured in the photograph was the gun used in the shooting incident, Gibbs suffered no prejudice from not calling an expert.  The Superior Court affirmed, and found with regard to the defense expert that Gibbs failed to produce an affidavit from trial counsel explaining the rationale for not securing a firearms expert or to

---

[3] *Id.* at 5-6.

[4] 42 Pa.C.S. § 9541,  *et seq*.

3

explain the absence of the affidavit,  and therefore did not establish that counsel's decisions were unreasonable.[5]

Gibbs then filed a second PCRA petition at the same time he filed his federal petition.[6] The second PCRA petition asserted a new claim of an alibi, founded upon affidavits of Qianna Matthews and James Bruce -- allegedly unavailable at trial -- suggesting that Gibbs was not among the men involved in the shooting incident; the PCRA court dismissed the second petition as untimely.  The Superior Court affirmed the dismissal, holding that Gibbs always knew that Bruce allegedly could supply him with an alibi and noting that Gibbs alleged that Matthews was subpoenaed and was present at one of his trials.[7]

## II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996[8] ("AEDPA"), governs habeas petitions like the one before this Court.  Under the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States."[9]  Where, as here, the habeas petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court conducts a *de novo* review of "those portions of the report or specified proposed

---

[5] R&R at 6-10.

[6] This proceeding was stayed pending resolution of the second PCRA petition.

[7] R&R at  11-12.

[8] 28 U.S.C. § 2254.

[9] 28 U.S.C. § 2254(a).

findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[10]

When the claims presented in a federal habeas petition have been decided on the merits in state court, a district court may not grant relief unless the adjudication of the claim in state court: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[11]

A state court's decision is "contrary to" clearly established law if the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."[12]  A decision is an "unreasonable application of" clearly established law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."[13]  The "unreasonable application" clause requires more than an incorrect or erroneous state court decision.[14]  Instead, the application of clearly established law must be "objectively unreasonable."[15]

---

[10] 28 U.S.C. § 636(b)(1).

[11] 28 U.S.C. § 2254(d).

[12] *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

[13] *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

[14] *Id.*

[15] *Id.*

A petitioner faces a high hurdle in challenging the factual basis for a prior state-court decision rejecting a claim.  The prisoner bears the burden of rebutting the state court's factual findings by clear and convincing evidence.[16]  Moreover, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[17]

## III.  DISCUSSION

In his counseled federal habeas petition, Gibbs asserted the following claims: (1) a freestanding claim for habeas relief based upon his assertion of actual innocence, founded upon the affidavits of Matthews and Bruce; (2) ineffective assistance of trial counsel for failing to object to prosecutorial misconduct involving the Commonwealth's introduction of the photographic evidence; (3) ineffective assistance of trial counsel for failing to consult and call at trial a defense ballistics expert; and (4) a claim that all prior counsel were ineffective for failing to raise the substantive ineffectiveness claims.  The R&R concluded that the freestanding actual innocence claim is not cognizable on *habeas* review, and that the other claims were either procedurally defaulted or without merit.  Gibbs objects to the R&R on the grounds that the R&R deferred to facts found by Superior Court that were inaccurate and therefore disputes the conclusion that the evidence against Petitioner was overwhelming, and that trial counsel was ineffective for failing to object to asserted prosecutorial misconduct concerning the admission of the photograph of Petitioner holding a gun and for failing to call a ballistics expert.  Relatedly, Gibbs objects to the conclusion that the newly-discovered evidence would not, in the context of the trial, have resulted in a different verdict, thereby establishing Petitioner's actual innocence

---

[16] *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (internal quotations and citations omitted).

[17] *Id.* (internal quotation omitted).

claim; and argues that the actual innocence claim may form an independent basis for habeas relief. Petitioner also objects to the conclusion that the failure to exhaust certain ineffective assistance of counsel claims was not excused.

    A.    *Freestanding Actual Innocence Claim*

As recently explained in this District, the petitioner asserting a freestanding actual innocence claim must clear a high hurdle, if the claim is recognizable at all:

> While neither the Supreme Court nor the Third Circuit has "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," *McQuiggan v. Perkins*, --- U.S. ---, ---,133 S. Ct. 1924, 1931 (2013); *see also Sistrunk* [*v. Rozum*, 674 F.3d 181, 187 n. 2 (3d Cir. 2012)], the Supreme Court has suggested that insofar as such a claim is cognizable, the threshold showing for the claim would be "extraordinarily high," requiring "more convincing proof of innocence" than the showing required for a "gateway" claim of innocence pursuant to *Schlup v. Delo*, 513 U.S. 298 (1995). *House v. Bell*, 547 U.S. 518, 555 (2006). Under the *Schlup* standard, the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536–37 (quoting *Schlup*, 513 U.S. at 327).[18]

The Court need not decide here whether such a claim may be cognizable, because, even if it is, Petitioner cannot meet the high standard for establishing actual innocence. The prosecution presented evidence that Gibbs's DNA was in the dried blood on the discarded shirt worn by the assailant, that the Dodge Intrepid and the handgun recovered at the scene belonged to Gibbs's girlfriend, with whom he resided, and that ammunition found at the scene matched ammunition found at Gibbs's home. Gibbs contends that Bruce would testify that Bruce and Gibbs were together at a barbershop at the time of the shooting, and that Matthews would testify that while walking to the laundromat that day, she heard what sounded like firecrackers, and then saw three

---

[18] *United States v. Dukes*, No. 11-4269, 2014 WL 4851489, * 9 (E.D. Pa. Sept. 30, 2014) (ruling under 28 U.S.C. § 2255).

men running toward her, one of whom removed his shirt and threw it away, and none of whom was Gibbs.[19]

The fundamental premise upon which all of Gibbs's claims rests is that the state courts incorrectly assessed the strength of the prosecution's case against him.  In this regard, Petitioner has not shown that the state courts' factual determinations were unreasonable as required under AEDPA.[20]  Petitioner objects to the conclusion of the R&R that the evidence against him was overwhelming, contending, for example, that Davis received a telephone call from the company from which she had purchased the Intrepid, after the company received inquiries from the police, that Petitioner was not identified by the officers, that eyewitness testimony was contradictory, and that Davis's gun recovered at the scene had not been fired.[21]  The Court need not determine that the evidence of guilt was overwhelming to find that the evidence of Petitioner's guilt was certainly strong enough that even had the testimony of the asserted later-discovered witnesses been presented, a reasonable juror could have found the prosecution's evidence, which linked all of the physical evidence to Gibbs either directly (the DNA evidence on the shirt) or indirectly (the car and gun owned by Gibbs's girlfriend) more compelling.[22]   Although Petitioner describes the case as a "very thin circumstantial identification case,"[23] he fails to acknowledge the deference due the state court under AEDPA.

---

[19] Neither Bruce nor Matthews testified at trial, and Gibbs argues that despite the services of a private investigator, and although at least Matthews was available at some point, they were not located again until several years after his conviction.

[20] *Burt*, 134 S. Ct. at 15.

[21] Objections at 1-2.

[22] In addition, the proposed testimony of Matthews in some ways supported the Commonwealth's case; for example, that the shirt was discarded by one of the three men who ran toward her.

[23] Amended Traverse at 6.

8

B.      *Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in *Strickland v. Washington*.[24]   Under *Strickland*, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced petitioner.[25]   Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[26]   Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[27]   For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[28]   Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a petitioner must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[29]   In evaluating the Pennsylvania courts' treatment of ineffectiveness claims, the Court must determine whether the state courts' "application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable [and] . . . resulted in an outcome that cannot reasonably be justified under *Strickland*."[30]

---

[24] 466 U.S. 668 (1984).

[25] *Id.* at 687.

[26] *Id.* at 690.

[27]  *Lewis v. Horn*, 581 F.3d 92, 106-07 (3d Cir. 2009).

[28] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991)).

[29] *Strickland*,  466 U.S. at 694.

[30] *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

1.    <u>Introduction of Photographic Evidence</u>

The R&R concluded that this claim was unexhausted and procedurally defaulted because Petitioner never fairly presented the state courts with the specific theory that counsel was ineffective for failing to object to asserted prosecutorial misconduct in introducing photographs of Petitioner holding a submachine gun in his second trial after the evidence had been excluded as inflammatory in Petitioner's first trial.  As noted above, the photograph had been introduced for the limited purpose of demonstrating that Petitioner had access to a weapon capable of producing the type of spent ammunition recovered from the crime scene.  The Superior Court concluded on direct appeal that the admission was not in error as it was not overly prejudicial given the trial court's limiting instruction.  On collateral review, Petitioner did not raise an ineffective assistance claim based the alleged prosecutorial misconduct, instead asserting ineffectiveness based on counsel's failure to call a ballistics expert to refute the claim that the gun in the photograph could have been the weapon that fired the shots at issue.  Petitioner does not dispute that the claim of ineffectiveness for failure to object to prosecutorial misconduct was not presented to the state court, but argues that the default should be excused because had the evidence been excluded, the outcome of the trial would have been different, reprising the actual innocence argument.  Petitioner objects that the R&R's contrary conclusion was premised on a "mistaken view of the strength of the Commonwealth's case . . . which caused the Honorable Magistrate Judge to erroneously conclude that admission of the subject evidence was harmless."[31]  The Court disagrees that the analysis in the R&R was so limited; the R&R also concluded that counsel had fully contested the admissibility of the photograph and that Petitioner

---

[31] Objections at 3.

made no persuasive argument that the prosecutor committed misconduct.[32]  The Court agrees

with this analysis, and for these reasons and the reasons stated in the rejection of the actual

innocence claim, overrules the objection to the R&R.

      2.    <u>Ballistics Expert</u>

The claim that counsel was ineffective for failure to present a ballistics expert to testify

that the gun in the photograph could not have fired the shots at issue was fully presented to the

state court. The PCRA court held that Petitioner could not establish prejudice because the

prosecution's expert had not testified that the gun in the photograph was used in the shooting; on

appeal the Superior Court held that Petitioner failed to meet his burden of showing that counsel

had acted unreasonably.[33]  The R&R concluded that the PCRA court's finding that prejudice had

not been established was not an unreasonable application of *Strickland*.  Petitioner objects that

the proposed defense testimony would have established conclusively that the gun in the

photograph could not have been used in the shooting, and that the R&R again relied on an

erroneous view of the strength of the prosecution's case.  The Court agrees with the reasoning of

the R&R, and again notes that Petitioner's arguments fail to accord the deference required to the

state court under AEDPA.  Because there is no merit to the specific ineffectiveness claims, the

Court also rejects the argument that other counsel were ineffective for failing to raise such

claims.

## IV.    CONCLUSION

The objections to the R&R are overruled.  Because Petitioner has not made a substantial

showing of the denial of a constitutional right, the Court holds, in accordance with the judgment

---

[32] R&R at 23-25.

[33] R&R at 26-27.

of the Court of Appeals, that a certificate of appealability should not issue.  There is no basis for concluding that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[34]

_____

[34] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation omitted).